CHARLES WALLER, Plaintiff-Appellant, v. ALKA BAGGA, Defendant-Appellee.

First District (1st Division)    No. 1—90—1639

Opinion filed September 16, 1991.

James T.J. Keating, P.C., of Chicago (Elizabeth S. Davis and James T.J. Keating, of counsel), for appellant.

Williams & Montgomery, Ltd., of Chicago (James K. Horstman, Barry L. Kroll, Jeffrey H. Lipe, and Lloyd E. Williams, Jr., of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff Charles Waller commenced this personal injury action against defendant Alka Bagga for defendant's alleged negligence in operating her motor vehicle. After a jury verdict in plaintiff's favor in the amount of $5,000, plaintiff unsuccessfully moved for a new trial predicated upon the court bailiff's prejudicial, unauthorized communications to jurors prior to and during trial. The sole issue on appeal is whether the court abused its discretion in denying plaintiff a new trial. For the reasons that follow, we affirm.

The evidence adduced at trial reflects that on the morning of June 11, 1983, plaintiff was the offensive coordinator of the Chicago Blitz, a United States Football League team. Plaintiff was driving to work when his vehicle was struck by defendant's vehicle at an intersection in the City of Des Plaines.

During trial, defendant contested both liability and damages. In particular, defendant attempted to show that she did not, as plaintiff alleged, negligently run a red light; rather, defendant claimed that she proceeded through the intersection under a yellow light and struck plaintiff's vehicle only after that vehicle advanced into the intersection under a red light. Additionally, defendant attempted to show that the collision resulted in no injuries to plaintiff's lower back as alleged, but that plaintiff's injuries were merely preexisting.

At the close of the evidence, the jury returned a verdict for plaintiff in the amount of $6,250, which it reduced by 20% for plaintiff's contributory negligence. This award reflected damages for aggravation of a preexisting condition and future medical expenses. No damages were awarded for permanent disability resulting from the accident or for pain and suffering. No award for plaintiff's lost wages was made because plaintiff dropped this claim prior to deliberations. Subsequently, the jury was polled and each juror assented to the verdict.

The day after the jury returned its verdict, one of the jurors, Dorie Alexander, placed an unsolicited telephone call to plaintiff's counsel. According to Alexander's affidavit, which plaintiff submitted in support of his motion for a new trial, Alexander claimed that the bailiff twice told her, prior to any witness' testimony, that "this

case should never have come to court." This statement was made while the bailiff was escorting the jury to the elevator. On another occasion, the bailiff remarked in the jury room during a recess that "this case shouldn't even be here." Alexander's affidavit also indicated that before plaintiff testified, the bailiff stated to the jury that plaintiff "had been head coach at San Diego for only one year because he had a losing season. [The] Bailiff implied that [plaintiff] was a 'bad coach.'" The affidavit continued by stating that during deliberations, another juror, William Wright, "told the jury that [plaintiff] was divorced." After verdict, the affidavit states, the bailiff told Alexander that "[plaintiff] left his wife for a younger woman, the younger woman who sat in the courtroom during trial."

In addition to Alexander's affidavit, plaintiff submitted the affidavit of juror William Wright. Wright stated in his affidavit:

"3. That during the trial of this case and before jury deliberations began, [the bailiff] said to me that he was wondering whether the plaintiff, Mr. Waller, was divorced and whether Mr. Waller's new wife was the young woman sitting in the back of the courtroom that day. I told [the bailiff] that the young woman he was referring to was my wife.

4. That during deliberations, I joked that [the bailiff] was wondering whether the plaintiff, Mr. Waller was divorced."

At the hearing on plaintiff's motion, the record reflects that, although the court did not strike the affidavits, it considered them "palpably unworthy of consideration." The court supplied no further analysis and no evidentiary hearing was held to determine the veracity of the affidavits. Defendant supplied no counteraffidavits, and the bailiff did not testify.

■ The first issue we address is whether a juror's affidavit may ever be properly employed to impeach a verdict. In *People v. Holmes* (1978), 69 Ill. 2d 507, 372 N.E.2d 656, the court held that in certain situations, and contrary to the trial court's decision in that case, jurors' testimony can be used to impeach their verdict. Testimony at Holmes' trial involved identification of the defendant's shoes with footprints left in the snow at the scene of the crime. Several members of the jury made an independent visit to a Florsheim shoe store to inspect the logo's design on the heels of that shoe type. The results of this investigation were discussed during deliberations of the jury. In analyzing whether the subsequent testimony or affidavits from the jurors could be used to impeach their verdict, the court distinguished between testimony concerning

the subjective mental processes of the jurors and testimony about improper external influences upon the jurors:

> "In the first category are those instances in which it is attempted to prove by a juror's testimony or affidavit the motive, method or process by which the jury reached its verdict. These, almost without exception, have been held inadmissible. *** [Citations.] The second category involves those situations in which the testimony or affidavit of a juror is offered as proof of conditions or events brought to the attention of the jury without any attempt to show its effect on the jurors' deliberations or mental processes. In most jurisdictions such proof is admissible." (*Holmes*, 69 Ill. 2d at 511-12, 372 N.E.2d at 658.)

After making this distinction, the *Holmes* court went on to conclude that a juror should be permitted to testify whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. *Holmes*, 69 Ill. 2d at 516, 372 N.E.2d at 660.

■ In this case, the jurors' affidavits comport with the limitations set forth in *Holmes*. The affidavits allege that extraneous, prejudicial communications took place; however, the affidavits are silent as to the effect these comments had upon the individual juror's subjective mental processes. In accordance with *Holmes*, we believe that plaintiff's affidavits were properly advanced for the purpose of impeaching the jury's verdict.

We next consider the matter of prejudice. Returning to *Holmes*, the court stated on this matter:

> "We turn now to the question whether under the circumstances shown the judgment must be reversed and the cause remanded. Presumably there are many types of 'extraneous prejudicial information' or 'outside influence[s],' and we need not and do not discuss whether and in what types of situations a defendant might be required to show 'such a probability that prejudice will result that it is [to be] deemed inherently lacking in due process.' [Citation.] Here, the 'extraneous information' improperly brought to this jury's attention was in the nature of evidence with which the defendant had not been confronted at trial and which he had no opportunity to refute. *** We do not interpret *Rivers* to mean, nor do we now hold, that every instance in which extraneous or unauthorized information reaches the jury results in error so prejudicial as to require reversal. Here the extraneous in-

formation improperly brought to the jury's attention was in the nature of evidence crucial to the question of defendant's identification with which he had neither been confronted at trial nor had the opportunity to refute. Under these circumstances we hold that the investigation by the members of the jury resulted in error so prejudicial that the judgment must be reversed and the cause remanded." *Holmes*, 69 Ill. 2d at 516-19, 372 N.E.2d at 660-62.

■ Cases in the civil context subsequent to *Holmes* have interpreted *Holmes* as "accept[ing] a standard that there must be a probability of prejudice" (*Frede v. Downs* (1981), 101 Ill. App. 3d 812, 814, 428 N.E.2d 1035, 1036), which may be satisfied when "the unauthorized evidence directly relates to issues in the case and may have improperly influenced the verdict." *Heaver v. Ward* (1979), 68 Ill. App. 3d 236, 241, 386 N.E.2d 134, 139.

In *Heaver*, a juror produced during deliberations a "Rules of the Road" book which was not admitted into evidence but which the jury consulted in reaching its verdict. The court reversed and remanded for a new trial. Similarly, in *Frede*, which involved a boating accident, the verdict was set aside where a juror produced during deliberations a book which contained rules applicable to a skipper's duty when approaching another boat, a matter critical to the issue of liability. In both cases, and consistent with *Holmes*, the court did not delve into the actual effect the extraneous matter had on the jury, but found it sufficient that the matter related to a critical issue in the case and may have improperly influenced the jury. See also *Brown v. Johnson* (1981), 92 Ill. App. 3d 1095, 416 N.E.2d 799 (numerous jurors' unauthorized visit to accident scene required reversal where visit related to key issue in case and may have improperly influenced verdict).

■ In this case, although the comments were clearly improper, we do not believe they require reversal under the *Holmes* line of cases. The theme underlying these cases is that the extraneous matter bore relevancy to a critical issue in the case and was considered by the jury during its deliberations. Neither of these factors are present in this case.

Regarding whether the comments impact on a critical issue, plaintiff suggests only that the bailiff's comments impacted on his credibility as a witness. Plaintiff asserts that by telling the jury that he was a bad coach and divorced, the bailiff may have compelled the jury to disbelieve plaintiff's testimony. While we agree that credibility may be a critical issue in a given case, we believe the

statements cannot be reasonably viewed as affecting that issue. The jury had ample opportunity to observe plaintiff's demeanor and draw its own conclusion as to plaintiff's credibility. It stretches reality to believe that a modern-day jury would believe a bailiff's ephemeral and insubstantial comments over its own observations, especially in light of the judge's instruction, among others, that it is the sole judge of a witness' credibility. Similarly, as for the bailiff's comment that "this case shouldn't even be here," no critical issue is implicated as the comment implicates both parties' cases equally if it does so at all.

Regarding whether the comments tainted the deliberative process, there is no clear evidence that the bailiff's comments ever reached all of the jurors or, if they did, formed a material part of the jury's deliberations. In *Holmes* and its progeny, the extraneous matter clearly entered the deliberative process. Here, the affidavits of Wright and Alexander conflict as to what occurred in the jury room regarding plaintiff's supposed divorce, and there is *no* evidence that the other statements ("this case shouldn't even be here" and "bad coach") were discussed during deliberations. This lack of infiltration distinguishes this case from *Holmes*, and we therefore do not accept it as analogous to the situation before us.

■ We would not reach a different conclusion in this case even if we were to apply the rules developed regarding unauthorized communications with a jury by the court, court personnel or third parties. The rule adopted in these cases has been stated by our supreme court as follows:

> "In our State the rule has judicially evolved that a jury verdict will not be set aside where it is apparent that no injury or prejudice resulted from a communication to the jury either by the court or by third persons outside the presence of the defendant." (*People v. Rettig* (1972), 50 Ill. 2d 317, 319, 278 N.E.2d 781, 782, *cert. denied* (1972), 409 U.S. 895, 34 L. Ed. 2d 152, 93 S. Ct. 186.)

Other opinions within this line of cases have stated the rule thusly:

> "Many courts, perhaps the majority, take the view that unless communications from the officer to the jury have a manifest tendency to influence the jury improperly against the unsuccessful party, or were such that prejudice resulted to such party, they furnish no ground for a new trial." *Workman v. Goldford* (1967), 86 Ill. App. 2d 403, 407, 230 N.E.2d 574, 576-77.

Our research reveals only one case where an Illinois court has reversed a jury's decision solely on the basis that a third person's comments to the jury were so prejudicial to one party that reversal was required. In *People v. Kawoleski* (1924), 313 Ill. 257, 145 N.E.2d 203, the court reversed a conviction based on a deputy sheriff's comment that "it should not take more than two or three minutes to convict that bird." In finding that the comment must have been manifestly intended to influence the jury against defendant, the court noted that the comment was made during a court recess, 8 to 10 feet from the jury, and in a loud tone of voice audible to the jury. *Kawoleski*, 313 Ill. at 258, 145 N.E. at 203; see also *People v. Tilley* (1950), 406 Ill. 398, 94 N.E.2d 328 (cumulative effect of errors, including prejudicial comments of juror's sister-in-law in front of jury, required reversal); *People v. Patterson* (1980), 90 Ill. App. 3d 775, 413 N.E.2d 1371 (prosecutor's referral to defendant charged with rape as "Chester the molester" in presence of juror, although prejudicial, was cured where juror indicated he was not prejudiced and had not told other jurors).

In this case, the bailiff's comments clearly do not fall within the same class as the one made in *Kawoleski*. Again, the comment that "this case shouldn't be here" is neutral, and the "bad coach" and "divorcee" comment do not reflect a manifest tendency to sway the jury against plaintiff.

In summary, we affirm the circuit court's denial of a new trial. We reiterate that the bailiff's conduct in this case was totally inappropriate. Every litigant deserves his day in court unencumbered by outside influences. After careful review, we conclude that the court did not abuse its discretion in concluding that the bailiff's comments did not so encumber the proceedings as to deny plaintiff his day in court.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

MANNING, P.J., and CAMPBELL, J., concur.