JAMES RENSHAW *et al.*, Plaintiffs-Appellants, v. KATHERINE M. BLACK, Defendant-Appellee.

Fifth District    No. 5—97—0884

Opinion filed October 16, 1998.

Robert L. King, of Carr, Korein, Tillery, Kunin, Montroy, Cates & Glass, of East St. Louis, for appellants.

Joseph B. McDonnell, of Greensfelder, Hemker & Gale, of Belleville, for appellee.

JUSTICE KUEHN delivered the opinion of the court:

Plaintiffs, James and Sharmon Renshaw, appeal the trial court's September 26, 1997, order denying their motion to reconsider the trial court's August 4, 1997, summary judgment order entered against them. We reverse and remand for further proceedings.

This is a story of legal malpractice in a highly specialized area of law—education law. The Renshaws are parents of a daughter with special educational needs as a learning disabled student. She was enrolled in the third grade during the 1989-90 school year in the Giant City School District. During that school year, she was identified as a student with special learning disabilities. The child's problems include attention deficit disorder, an auditory processing disorder, a sensory motor processing disorder, a visual spatial deficit, and severe anxiety and self-esteem issues. She is of normal to above normal intelligence.

The Education of the Handicapped Act (EHA), now known as the Individuals with Disabilities Education Act, mandates that school districts must provide students with such learning disabilities with a "free appropriate public education." 20 U.S.C. § 1400(c) (1988); 20 U.S.C. § 1400(c) (1994). The educational needs of the student must be addressed in writing. 20 U.S.C. § 1401(a)(19) (1988) (now 20 U.S.C. § 1401(a)(20) (1994)). This written document is called an individualized education program (IEP). 20 U.S.C. § 1401(a)(20) (1994). The IEP is prepared following a meeting between school officials and the student's parents. 20 U.S.C. § 1401(a)(20) (1994). If the parties cannot

agree upon the student's IEP, the parents are entitled to an impartial due process hearing to resolve their complaints. 20 U.S.C. § 1415(b)(2) (1988); 13 Ill. Reg. 15784-87 (adopted September 26, 1989) (now 89 Ill. Adm. Code § 510.70 (1996)). This evidentiary hearing is conducted before a hearing officer. 13 Ill. Reg. 15789 (adopted September 26, 1989) (now 89 Ill. Adm. Code § 510.90 (1996)). The hearing officer's determination is called a Level I decision. 20 U.S.C. § 1415(b)(2) (1988); 13 Ill. Reg. 15784 (adopted September 26, 1989) (now 89 Ill. Adm. Code § 510.70 (1996)). The Level I decision can be further appealed to a Level II hearing officer, who enters a Level II decision. 20 U.S.C. § 1415(c) (1988); 13 Ill. Reg. 15788 (adopted September 26, 1989) (now 89 Ill. Adm. Code § 510.80 (1996)). A Level II decision is appealable in the federal courts for a limited administrative review. 20 U.S.C. § 1415(e) (1988); 13 Ill. Reg. 15792 (adopted September 26, 1989) (now 89 Ill. Adm. Code § 510.110 (1996)).

In this case, the Giant City School District prepared an IEP for the student in February 1990. The Renshaws did not believe that this IEP adequately addressed their daughter's educational needs. They hired defendant Katherine M. Black, an attorney who specializes in educational law, to represent them in their dispute with the Giant City School District. In July 1990, the Renshaws believed that they had reached an agreement with the district. When the changes to the original IEP were not implemented at the school year's beginning, the Renshaws requested a due process hearing.

In preparation for the hearing, the Renshaws hired various professionals to examine their daughter and to provide their expert opinions regarding her educational needs. Upon a review of these evaluations and after consultation with their attorney, Katherine Black, the Renshaws withdrew their daughter from public school and enrolled her in a private school in Carbondale.

At the due process hearing, the Renshaws sought reimbursement for the evaluation expenses, as well as for the private school tuition they were incurring. The Level I hearing officer determined that the Giant City School District violated the Renshaw student's rights. The officer ordered the district to reimburse the Renshaws for the evaluation expenses, but the officer concluded that he could not order the district to pay for the private school tuition because that particular school "is not authorized for payment by the Governor's Purchased Care Review Board as of Fall[ ] 1990." The Level II hearing officer essentially agreed with the lower level and affirmed this decision with some minor modifications, stating that no evidence had been introduced at the Level II hearing that the particular private school at issue was on the approved list. Simply stated, the hearing officers

found that there was no legal basis for awarding tuition at a nonapproved private school.

The Renshaws sought review in the federal district court by filing a lawsuit pursuant to the EHA on July 19, 1991—three days after the statute of limitations for such an action expired. A summary judgment on this sole issue was ultimately entered against the Renshaws on July 30, 1992.

Without addressing the specifics, it is sufficient for us to say that the state of the law at the time that the hearing officers entered their decisions and as of the date when the Renshaws filed their federal EHA claim was against the reimbursement of tuition for a nonapproved private school. However, the law is an ever-changing entity, and a mere four months after attorney Black filed the Renshaws' federal case, the United States Court of Appeals for the Fourth Circuit ruled that parents can recover tuition from a nonapproved private school. *Carter v. Florence County School District Four*, 950 F.2d 156, 161-62 (4th Cir. 1991). The United States Supreme Court granted *certiorari* in order to resolve this issue. *Florence County School District Four v. Carter*, 507 U.S. 907, 122 L. Ed. 2d 649, 113 S. Ct. 1249 (1993). On November 9, 1993, the Supreme Court affirmed the fourth circuit's decision. *Florence County School District Four v. Carter*, 510 U.S. 7, 9-10, 126 L. Ed. 2d 284, 290, 114 S. Ct. 361, 363 (1993).

After the July 30, 1992, dismissal of their federal lawsuit, the Renshaws hired a new attorney to represent them in their ongoing dispute with the Giant City School District. This attorney worked on the case beginning in late 1992 and continuing for not quite one year. The Renshaws allege that if their federal lawsuit had not been dismissed, they would not have sought alternate representation.

On December 23, 1993, the Renshaws filed their complaint in this case alleging legal malpractice against attorney Black. The complaint was subsequently amended twice. The crux of their complaint involves the dismissal of their federal suit and their claims that, had the complaint not been dismissed, it would have been pending until November 1993 when the Supreme Court decided the *Florence County School District Four* case. The Renshaws point to the initial November 1992 trial setting of this case for support to their claim that the suit would still have been pending in November 1993, arguing that the case would surely have been continued from that initial setting by the parties or the court.

In answering the Renshaws' second amended malpractice complaint, attorney Black admitted the existence of an attorney-client relationship at all relevant times. She also admitted to missing the applicable statute of limitations and that the foundation for the lawsuit's

dismissal was this error. In her deposition, she stated that if *Florence County School District Four* had been on the books at the time of the relevant decisions in this case, the court would have ordered placement in the private school chosen by the Renshaws.

As the legal malpractice case continued, the Renshaws named no experts, believing that attorney Black's own admissions were sufficient to establish liability as a matter of law. The December 16, 1996, case management order entered by the trial court required the Renshaws to disclose the names of all opinion witnesses by January 31, 1997. The Renshaws made no such disclosure. Attorney Black filed a motion seeking to bar opinion witnesses. On March 21, 1997, the trial court entered an order barring all opinion witnesses from testifying on the Renshaws' behalf.

Subsequently, on March 31, 1997, attorney Black filed a motion for summary judgment, arguing that the issues of proximate causation and damages required opinion testimony and, as the Renshaws were barred from naming any opinion witnesses, they would be incapable of proving up their case. The Renshaws responded to this motion by arguing that attorney Black's own admissions and discovery deposition testimony (and expected trial testimony) sufficed to prove proximate causation and damages. The Renshaws also filed a cross-motion for summary judgment on the issue of liability. The trial court agreed with attorney Black and on August 4, 1997, granted her motion.

The Renshaws filed a motion for reconsideration and for leave to name attorney Black as an opinion witness. The trial court denied this motion on September 26, 1997.

The Renshaws appeal from the trial court's order granting attorney Black's summary judgment motion and denying their motion to reconsider.

■ In determining the appropriateness of a summary judgment, the trial court strictly construes all evidence in the record against the movant and liberally in favor of the opponent. *Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871 (1986). The court must consider all pleadings, depositions, admissions, and affidavits on file to decide if there is any issue of material fact. *Myers v. Health Specialists, S.C.*, 225 Ill. App. 3d 68, 72, 587 N.E.2d 494, 497 (1992). On appeal, courts review summary judgment orders *de novo. Myers*, 225 Ill. App. 3d at 72, 587 N.E.2d at 497.

In ruling in attorney Black's favor, the trial court stated that the Renshaws would be incapable of proving their legal malpractice case absent expert testimony. This statement may be accurate. While the trial court states that "there are certain situations in which the admis-

sions of a defendant professional may supply needed proof," the trial court goes on to conclude that the Renshaws cannot utilize attorney Black's own expert opinions because they failed to disclose her as a Supreme Court Rule 213(g) (166 Ill. 2d R. 213(g)) opinion witness prior to the cut-off date. On the basis of this conclusion, we are reversing and remanding this case to the trial court for further proceedings.

■ Supreme Court Rule 213(g) defines the term *opinion witness* as "a person who will offer any opinion testimony." 166 Ill. 2d R. 213(g). The rule further requires parties to include, in answer to written opinion witness interrogatories, the subject matter upon which the expert will testify, his or her qualifications, and his or her conclusions and opinions. 166 Ill. 2d R. 213(g). The Supreme Court Rule 213(g) requirement of disclosure was not designed to preclude the use of a professional malpractice defendant's own admissions made during the course of discovery. The purpose of requiring disclosure is to avoid late disclosure or surprise. As with Supreme Court Rule 220 (134 Ill. 2d R. 220), which preceded it, the rule works to establish a consistent framework by which the parties can discover the identity, opinions, and qualifications of opinion witnesses. *A.W. Wendell & Sons, Inc. v. Qazi*, 254 Ill. App. 3d 97, 114, 626 N.E.2d 280, 293 (1993). With a defendant professional, the identity and qualifications should not be at issue. A defendant professional should not be heard to argue surprise when confronted by his or her own previously expressed opinions.

■ Attorney Black concentrates her practice in the field of education law, which is something shared by very few other attorneys. The trial court referred to education law as "arcane." The Renshaws were unsuccessful in their attempts to locate even one other attorney in southern Illinois knowledgeable in the field. Especially in this unique situation, we hold that attorney Black's own previously expressed expert opinions on the subject matter of the underlying litigation would be admissible without regard to the disclosure requirements of Supreme Court Rule 213(g). Attorney Black cannot reasonably claim surprise in this case. She made certain admissions in answer to the Renshaws' second amended complaint relative to her duty to the Renshaws and breach thereof. She also made statements in her discovery deposition that can properly be considered admissions of one kind or another relative to the likelihood of the Renshaws' success in the underlying case, experts who would have testified on behalf of the Renshaws, and the reimbursability of expenses.

■ Entering summary judgment means that there are no genuine issues of material fact left to be decided by the trier of fact. The issue of proximate causation in a legal malpractice setting is generally considered a factual issue to be decided by the trier of fact. See *She-*

*hade v. Gerson*, 148 Ill. App. 3d 1026, 1031, 500 N.E.2d 510, 513 (1986); *Gelsomino v. Gorov*, 149 Ill. App. 3d 809, 815, 502 N.E.2d 264, 268 (1986). While attorney Black's deposition admissions may fall short of establishing her own liability in a summary judgment context, the admissions certainly create a factual issue to be decided by the ultimate trier of fact. Therefore, the judgment of the trial court must be reversed, and the cause must be remanded for further consideration of the summary judgment motions, including statements made by attorney Black relative to proximate causation and damages.

■ Because we are remanding this case for further proceedings, we must also address conclusions made by the trial court regarding the nature of attorney Black's admissions.

The trial court stated that attorney Black's opinions regarding the likelihood of the underlying suit's success are subjective in nature and speculative. The trial court is correct in concluding that her statements are subjective in nature, as her opinions have not yet been reduced to the objective standard. However, we feel compelled to comment that given the unique nature of this litigation, any expert would be required to engage in some speculation about the underlying case's outcome. Ultimately, an expert would be required to opine about whether or not a federal district court located within the seventh circuit would rely upon case law generated from the fourth circuit and whether the case would have remained pending in federal court long enough for the United States Supreme Court to ultimately decide that issue. No expert testimony on this issue could be definite, but such testimony could be within a reasonable certainty.

Additionally, the trial court concluded that attorney Black's admissions do not amount to judicial admissions. Judicial admissions are binding upon the party and cannot be controverted. *Giamanco v. Giamanco*, 111 Ill. App. 3d 1017, 1022, 444 N.E.2d 1090, 1093-94 (1982). Attorney Black's admissions in her answer to the Renshaws' second amended complaint fall within this category. See *State Security Insurance Co. v. Linton*, 67 Ill. App. 3d 480, 484, 384 N.E.2d 718, 721 (1978). A party's trial testimony can fall within this category if the testimony is clear and unequivocal. See *Gauchas v. Chicago Transit Authority*, 57 Ill. App. 2d 396, 400, 206 N.E.2d 752, 755 (1965). The trial court correctly stated that attorney Black's discovery deposition testimony failed to constitute a judicial admission. However, there is another applicable type of admission—the evidentiary admission. Evidentiary admissions can be controverted. See *Anfinsen Plastic Molding Co. v. Konen*, 68 Ill. App. 3d 355, 361, 386 N.E.2d 108, 112 (1979). Statements that attorney Black made during her discovery deposition could be considered evidentiary admissions subject to challenge. Evidentiary

admissions as to the malpractice tort elements at issue should be sufficient to raise a factual question precluding summary judgment.

For the foregoing reasons, the judgment of the circuit court of Jackson County is hereby reversed, and the cause is remanded with directions to reconsider the summary judgment motions in light of this opinion.

Reversed and remanded with directions.

MAAG and HOPKINS, JJ., concur.