FIRST DIVISION

November 23, 1998

No. 1-97-4661

EVA M. ADAMI,

Plaintiff-Appellant,

v.

JOHN V. BELMONTE, JVB MEDICAL ASSOCIATES, LTD., and GOTTLIEB MEMORIAL HOSPITAL,

Defendants-Appellees.

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Leonard R. Grazian,

Judge Presiding.

JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiff, Eva Adami, filed a medical malpractice action against defendants John V. Belmonte, Jr., JVB Medical Associates, Ltd., and Gottlieb Memorial Hospital.  Plaintiff alleged that while performing  surgery to remove her gallbladder, Doctor Belmonte (an agent of JVB Medical Associates) and his assistant, Doctor Guillermo Lara (an employee and agent of Gottlieb Hospital), perforated her small intestine, causing her numerous complications.  The jury found for defendants, and the trial court denied plaintiff's posttrial motion.  Plaintiff appeals, contending:  (1) the jury's verdict was against the manifest weight of the evidence; (2) the trial court erred in barring plaintiff from calling Gottlieb Hospital's retained expert during her case in chief; (3) the trial court failed to properly instruct the jury; (4) the trial court erred in barring plaintiff from commenting during closing arguments on Gottlieb Hospital's failure to call its expert to testify; and (5) counsel for Gottlieb Hospital asked an improper question of plaintiff's expert witness.  We affirm.  

In 1991, plaintiff was diagnosed with gallstones and referred to Doctor Belmonte.  Doctor Belmonte examined plaintiff, then told her she needed surgery to remove her gallbladder.  Doctor Belmonte informed plaintiff there were two types of gallbladder surgeries he could perform on her, an "open procedure" or a "closed procedure."  In an open procedure, Doctor Belmonte would operate through an 8  -to 14 - inch incision in plaintiff's belly; in a closed procedure, Doctor Belmonte would operate through several smaller incisions in the belly.  Plaintiff agreed to let Doctor Belmonte decide which procedure to use.  

On November 5, 1991, Doctor Belmonte performed the closed procedure on plaintiff at Gottlieb Hospital.  Plaintiff developed complications and underwent a second surgery a few days later.  Plaintiff testified that Doctor Belmonte told her the second surgery was to fix her small intestine, which he had cut during her November 5 operation.  

Doctor Belmonte testified that Doctor Guillermo Lara assisted him in the November 5 surgery.  Doctor Belmonte testified that Doctor Lara did not do any incising or cutting during plaintiff's surgery.  However, Doctor Belmonte admitted stating in his pretrial deposition that "Doctor Lara assisted *** in the role of a cosurgeon.  The role of a cosurgeon is to provide exposure, to assist or control bleeding, and this entails clipping [and] cutting."

Doctor Belmonte testified he saw plaintiff the next day, November 6, and that she was nauseous and had diminished urine output.  Doctor Belmonte then went away on a trip.  He returned on November 9 and learned that, while he was away, doctors at Gottlieb Hospital had run tests on plaintiff that showed a perforation of her small intestine.  On November 12, Doctor Belmonte operated on plaintiff to repair the perforation.

Post-operatively, plaintiff developed a blood infection, renal failure, inflammation in the lining of her abdomen, and aggravation of her diabetes.  The perforation and resulting complications necessitated a 10-week hospital stay. 

Doctor Belmonte testified he did not perforate plaintiff's small intestine during the gallbladder surgery.  He also denied telling plaintiff or any of her family members that he had cut the small intestine.  Doctor Belmonte testified that plaintiff had preexisting ulcer disease that likely weakened her bowel wall and caused the perforation.  

Doctor Lara testified he assisted Doctor Belmonte during plaintiff's gallbladder operation on November 5.  Doctor Lara's role in the operation was to use two instruments (graspers) to hold and retract the gallbladder so that Doctor Belmonte could excise it.  Doctor Lara testified that his instruments came nowhere near plaintiff's small intestine; however, Doctor Lara also testified that he "can't say" whether or not he touched plaintiff's small intestine during her surgery.

Plaintiff's expert witness, Doctor Stephen Goldstone, testified he had read the operative report and viewed a videotape of plaintiff's November 5 gallbladder operation.  Doctor Goldstone opined that the injury to plaintiff's small intestine occurred during the gallbladder surgery "while Doctor Lara and [Doctor] Belmonte were using instruments and manipulating the [small intestine]."  Doctor Goldstone opined that the injury would not have occurred if Doctor Belmonte and Doctor Lara had used ordinary care while using the instruments under their control.  Doctor Goldstone also opined that Doctor Belmonte violated the standard of care when he failed to convert from a closed procedure to an open procedure, failed to  timely discover the perforation and failed to promptly reoperate on plaintiff.

On cross-examination, Doctor Goldstone testified he did not know when the injury occurred; he stated that the actual perforation might have occurred during the surgery or a few hours later due to trauma during the surgery.  Doctor Goldstone stated he did not know which instruments Doctor Lara had handled during the surgery.  Doctor Goldstone agreed that Doctor Lara did not violate the standard of care if he merely positioned the gallbladder while Doctor Belmonte did all the incising and cutting.

Doctor Goldstone also stated that a perforation of the small intestine can occur during gallbladder surgery even in the absence of negligence.

Doctor Belmonte's expert witness, Doctor Anthony Altimari, testified he reviewed plaintiff's hospital records and the videotape of plaintiff's November 5 gallbladder operation.  Doctor Altimari testified neither Doctor Belmonte nor Doctor Lara violated the standard of care during the surgery.  Doctor Altimari stated that the perforation in plaintiff's small intestine perhaps resulted from a preexisting ulcer.  Doctor Altimari also opined that Doctor Belmonte did not violate the standard of care by failing to convert to an open procedure or by waiting until November 11 to reoperate.  

The jury found for defendants and the trial court denied plaintiff's posttrial motion.  Plaintiff filed this timely appeal.

First, plaintiff argues the jury's verdict was against the manifest weight of the evidence.  A judgment is against the manifest weight of the evidence when the opposite conclusion is evident or when the findings are unreasonable, arbitrary or not based on the evidence.  
Rhodes v. Illinois Central Gulf R.R.
, 172 Ill. 2d 213, 242 (1996).

Plaintiff argues the jury's verdict was contrary to the "undisputed fact" that plaintiff's small intestine was perforated during the gallbladder surgery performed by Doctor Belmonte and Doctor Lara.  However, both expert witnesses in this case acknowledged that such a perforation can happen even in the absence of negligence.  Doctor Altimari also agreed with Doctor Belmonte that plaintiff's injury could have resulted from a preexisting ulcer.  Further, Doctor Altimari testified he read plaintiff's medical records and viewed a videotape of the operation, and in his opinion, neither Doctor Belmonte nor Doctor Lara violated the standard of care.  Although Doctor Goldstone provided contrary testimony, the jury obviously found Doctor Altimari to be the more credible witness.  We will not substitute our judgment for the jury's credibility determinations.  
People v. Goosens
, 262 Ill. App. 3d 722, 728 (1994).

Next, plaintiff argues the trial court erred by barring Gottlieb Hospital's expert witness, Doctor Deziel, from testifying in plaintiff's case.  For the reasons that follow, we find no abuse of discretion by the trial court.

On September 28, 1996, Gottlieb Hospital filed answers to plaintiff's interrogatories naming Doctor Deziel as its expert.  Gottlieb Hospital stated it would call Doctor Deziel to testify he had reviewed the videotape of the surgery and in his opinion Doctor Lara (Gottlieb Hospital's agent) did not deviate from the standard of care.  On March 7, 1997, Doctor Deziel testified in his evidence deposition that plaintiff's small intestine was traumatized multiple times by instruments manipulated by Doctor Belmonte, not Doctor Lara, during her gallbladder surgery.

Two weeks before trial, by a letter dated April 16, 1997, plaintiff's counsel identified Doctor Deziel as an opinion witness plaintiff might call at trial.  On April 28, 1997, plaintiff's counsel caused a trial subpoena to be served on Doctor Deziel.  

On May 7, 1997, Gottlieb Hospital filed a motion to quash the trial subpoena on Doctor Deziel because plaintiff did not timely name him under Supreme Court Rule 213 (166 Ill 2d R. 213).  Doctor Belmonte also filed a motion to bar the testimony of Doctor Deziel in plaintiff's case in chief.  The trial court determined that the disclosure of Doctor Deziel as an expert witness for plaintiff was untimely and quashed the subpoena.

The trial court correctly determined that plaintiff's disclosure was untimely.  Supreme Court Rule 213(g) states "that [a]n opinion witness is a person who will offer any opinion testimony."  166 Ill. 2d R. 213(g).  The committee comments to the rule (166 Ill. 2d R. 213, Committee Comments) provide that, "in order to avoid surprise, the subject matter of all opinions must be disclosed pursuant to this rule and Supreme Court Rule 218."  Supreme Court Rule 218(c) provides "[a]ll dates set for the disclosure of opinion witnesses and the completion of discovery shall be chosen to ensure that discovery will be completed not later than 60 days before the date on which the trial court reasonably anticipates the trial will commence."  166 Ill. 2d R. 218(c).

Doctor Deziel was an opinion witness.  By failing to disclose him until two weeks before trial, plaintiff violated  Supreme Court Rules 213 and 218, which are 
mandatory
 rules of procedure.  
Department of Transportation v. Crull
, 294 Ill. App. 3d 531, 537 (1998).

Plaintiff argues that defendants waived the right to bar Doctor Deziel from testifying by waiting until the first day of trial before raising the Rule 213 violation.  In support, plaintiff cites 
Kosinski v. Inland Steel Co.
, 192 Ill. App. 3d 1017 (1989), and 
SPSS, Inc. v. Carnahan-Walsh
, 267 Ill. App. 3d 586 (1994.)  In 
Kosinski
, defendant waited until the first day of trial before filing a motion to bar plaintiff's expert from testifying because of plaintiff's failure to seasonably identify the expert in violation of Supreme Court Rule 220 (134 Ill. 2d R. 220) then in effect.  
Kosinski
, 192 Ill. App. 3d at 1025.  Since defendant had been aware for more than a month that plaintiff intended to call the expert, the trial court decline to enter an order excluding the testimony.  
Kosinski
, 192 Ill. App. 3d at 1025.  Instead, at the trial court's suggestion, defendant interviewed the expert prior to his taking the stand.  Thereafter, when the expert was called to testify, defendant made no objections.  
Kosinski
, 192 Ill. App. 3d at 1025.

On appeal, defendant argued the trial court erred in denying its motion to bar the expert from testifying.  
Kosinski
, 192 Ill. App. 3d at 1025. The appellate court disagreed, noting that defendant acquiesced in the trial court's arrangement that defendant question the expert prior to trial and inform the trial court if it found such questioning insufficient to present its defense at trial.  
Kosinski
, 192 Ill. App. 3d at 1025-26. The appellate court held "[a] party cannot claim error in a trial court's ruling when the party has acquiesced in that disposition."  
Kosinski
, 192 Ill. App. 3d at 1026.

In 
SPSS
, the trial court held a hearing on April 20, 1992, at which it set the trial commencement date for June 1, 1992.  
SPSS
, 267 Ill. App. 3d at 593.  Although plaintiff was apparently aware of Rule 220 violations by defendants' experts, plaintiff failed to raise those objections during the April 20 hearing, nor did it object to the June 1 trial date.  On the first day of trial, plaintiff raised the Rule 220 violations.  
SPSS
, 267 Ill. App. 3d at 593.  Citing 
Kosinski
, the appellate court held that plaintiff waived the issue by waiting until the day of trial to make its Rule 220 objections.  
SPSS
, 267 Ill. App. 3d at 593.

Kosinski
 and 
SPSS
 are inapposite.  Unlike 
Kosinski
, the trial court in the present case made no ruling to which defendants acquiesced in lieu of raising the Rule 220 violations.  Unlike 
SPSS
, the trial court set the trial date prior to plaintiff disclosing Doctor Deziel as its expert witness.  

In further contrast to 
Kosinski
 and 
SPSS
, in which the complaining parties waited more than a month before objecting to the experts' testimony, Gottlieb Hospital filed its motion to quash plaintiff's subpoena only about one week after the subpoena was served on Doctor Deziel.  Accordingly, Gottlieb Hospital's motion was not so untimely as to result in waiver. 

Plaintiff next argues that Gottlieb Hospital and Doctor Belmonte knew of Doctor Deziel's opinions as early as September 1996, and therefore they were not prejudiced by plaintiff's failure to disclose Doctor Deziel until April 1997.  Plaintiff contends that, in the absence of any prejudice, Doctor Deziel should have been allowed to testify. 

In support, plaintiff again cites 
SPSS
.  In 
SPSS
, plaintiff raised Rule 220 objections to defendant's experts, Cohn and Walsh, on the first day of trial.  
SPSS
, 267 Ill. App. 3d at 593.  The appellate court held that the trial court did not err in allowing defendant's experts to testify in the absence of any showing that plaintiff suffered any prejudice from the Rule 220 violation.  
SPSS
, 267 Ill. App. 3d at 593.  In particular, the appellate court noted that the trial court granted a month and a half break in the trial so that plaintiff would have ample opportunity to prepare for Cohn's testimony.  
SPSS
, 267 Ill. App. 3d at 593.  The appellate court also noted that plaintiff was not prejudiced by Walsh's testimony, since the trial court stated it gave no value to Walsh's testimony as an expert.  
SPSS
, 267 Ill. App. 3d at 593.

By contrast, the late disclosure of Doctor Deziel would have prejudiced Doctor Belmonte.  Doctor Deziel opined that plaintiff's small intestine had been traumatized by instruments manipulated by Doctor Belmonte during her gallbladder surgery. Doctor Belmonte indicates that although he knew of Doctor Deziel's opinion as early as September 1996, he made no effort to find a rebuttal expert because he determined that neither plaintiff nor defendants would call Doctor Deziel to testify.  Doctor Belmonte relied on plaintiff's failure to disclose Doctor Deziel as an opinion witness within Rule 213's timeframe and determined that plaintiff would not call Doctor Deziel to the stand.  Two weeks before trial, though, plaintiff informed Doctor Belmonte that she intended to call Doctor Deziel in her case in chief.  The lateness of the disclosure precluded any reasonable chance for Doctor Belmonte to find an expert to refute Doctor Deziel's testimony.   Accordingly, the trial court did not abuse its discretion by barring Doctor Deziel from testifying.

 
SPSS
 is also inapposite because it was interpreting Rule 220, which has since been repealed by order of June 1, 1995. The standards governing disclosure of opinion witnesses are now set forth in Rule 213.  As we stated in 
Department of Transportation v. Crull
, 294 Ill. App. 3d at 538-39:

"Rule 213 establishes more exacting standards regarding disclosure than did Supreme Court Rule 220 *** which formerly governed expert witnesses.   Trial courts should be more reluctant under Rule 213 than they were under former Rule 220 (1) to permit the parties to deviate from the strict disclosure requirements, or (2) not to impose severe sanctions when such deviations occur.  Indeed, we believe one of the reasons for new Rule 213 was the need to require stricter adherence to disclosure requirements."

Given this stricter standard of compliance, the trial court did not abuse its discretion by barring plaintiff from calling an opinion witness (Doctor Deziel) identified only two weeks before trial in violation of Rule 213.  

Next, plaintiff argues the trial court erred by failing to give Illinois Pattern Jury Instructions, Civil, No. 5.01 (3d ed. 1995)(hereinafter IPI Civil 3d No. 5.01), in connection with Gottlieb Hospital's failure to call its expert witness, Doctor Deziel, to the stand.  IPI Civil 3d No. 5.01 informs the jury that if a party fails to produce a witness whom the party has the power to produce, the jury may infer that the witness' testimony would be adverse to that party.  Plaintiff contends the trial court should have given IPI Civil 3d No. 5.01 to allow the jury to infer that Doctor Deziel's testimony would have been adverse to Gottlieb Hospital.   

IPI Civil 3d No. 5.01 (sometimes referred to herein as the "missing witness instruction") is available when:  (1) the witness was under the control of the party against whom the instruction is offered and could have been produced by reasonable diligence; (2) the witness was not equally available to the adverse party; (3) a reasonably prudent person would have produced the witness if she believed the testimony would be favorable to her; and (4) no reasonable excuse for the failure to produce the witness has been shown.  
Wilkerson v. Pittsburgh Corning Corp.
, 276 Ill. App. 3d 1023, 1028 (1995).

Doctor Deziel testified in his evidence deposition that Doctor Belmonte, not Doctor Lara, perforated plaintiff's small intestine.  Far from being an adverse witness, Doctor Deziel was actually a favorable witness for Gottlieb Hospital, since he exonerated Doctor Lara (Gottlieb Hospital's agent) of negligence.  On that basis alone, the adverse inference allowed under IPI Civil 3d No. 5.01 was not warranted, and the trial court therefore did not abuse its discretion by refusing to give the missing witness instruction. 

Gottlieb Hospital also argues that it did not want to prolong the trial by calling Doctor Deziel, whose testimony would have been largely cumulative to Doctor Altimari's testimony that Doctor Lara did not violate the standard of care.  Where, as here, the witness' testimony would be cumulative of facts already established and/or would unduly prolong the trial, the missing witness instruction is not warranted.  
Wilkerson
, 276 Ill. App. 3d at 1029; 
Glassman v. St. Joseph Hospital
, 259 Ill. App. 3d 730, 762 (1994).  

Taylor v. Kohli
, 162 Ill. 2d 91 (1994), cited by plaintiff, does not compel a different result.  In 
Taylor
, the trial court gave the missing witness instruction regarding plaintiff's failure to call his expert witness, Doctor Koman.  
Taylor
, 162 Ill. 2d at 94.  On appeal, plaintiff argued that the instruction was inappropriate because he had abandoned Doctor Koman as his expert 19 months prior to trial.  
Taylor
, 162 Ill. 2d at 94.   Our supreme court held that a party may avoid the missing witness instruction by giving reasonable notice prior to trial of the abandonment of his expert witness.  
Taylor
, 162 Ill. 2d at 98.

In the present case, plaintiff argues that the trial court should have given the missing witness instruction because Gottlieb Hospital never notified her of its intention to abandon Doctor Deziel as its expert.  We disagree.  
Taylor
 does not hold that reasonable notification of the abandonment of an expert witness is the only way to avoid the missing witness instruction.  That instruction may still be avoided where, as here, the witness in question was not adverse to the party who controlled him and the party has a reasonable excuse for failing to produce the witness. 

Next, plaintiff claims the trial court erred by barring her from commenting during closing arguments about Gottlieb Hospital's failure to call Doctor Deziel as a witness.  As discussed above, no adverse inference should have been drawn from Gottlieb Hospital's failure to call Doctor Deziel to testify; therefore, the trial court properly barred plaintiff from commenting thereon during closing arguments.

Plaintiff also argues the trial court erred by barring her from commenting about Gottlieb Hospital's failure to call plaintiff's other treating physicians.  Plaintiff waived this argument, as she cites only the portion of the record in which the trial court barred plaintiff from commenting on Doctor Deziel's failure to testify; she cites no part of the record showing that the trial court barred her from commenting on the failure of the other treating physicians to appear.  See 155 Ill. 2d R. 341(e)(7); 
Voutiritsas v. Intercounty Title Co.
, 279 Ill. App. 3d 170, 187 (1996)(failure to cite to relevant portion of record constitutes waiver.)

 Next, plaintiff argues the trial court erred when it failed to instruct the jury that Doctor Belmonte must use the skill and care ordinarily used by a reasonably well-qualified specialist "practicing in the same or similar localities" or "practicing under a national standard of [minimum] care." We find no error.  The appropriate jury instruction on the standard of care is Illinois Pattern Jury Instructions, Civil, No. 105.02 (3d ed. 1995)(hereinafter IPI Civil 3d No. 105.02), which provides:

"A [physician] who holds himself out as a specialist and provides service in his specialty must possess and apply the knowledge and use the skill and care ordinarily used by a reasonably well-qualified specialist [practicing in the same or similar localities]  under circumstances similar to those shown by the evidence.  A failure to do so is professional negligence."

Where the national standard of minimal care is the same as the local standard, the trial court may delete the bracketed phrase "practicing in the same or similar localities."  See IPI Civil 3d No. 105.02, Notes on Use, citing 
Purtill v. Hess
, 111 Ill. 2d 229 (1986), and 
Karsten v. McCray
, 157 Ill. App. 3d 1 (1987).  In the present case, there was no evidence showing that the national standard of minimal care differed from the local standard, so the trial court gave IPI Civil 3d No. 105.02 without the bracketed portion.  The trial court did not abuse its discretion in so doing.

Next, plaintiff argues counsel for Gottlieb Hospital improperly questioned plaintiff's expert, Doctor Goldstone.  Specifically, plaintiff complains about the following exchange:

"Q.  Did they (plaintiff's attorneys) explain to you that they had five of their complaints dismissed as to Gottlieb?

MR. CONCANNON [Plaintiff's counsel]: Objection.

THE COURT: Sustain the objection.  The jury will disregard that, counsel."

Plaintiff argues that counsel's question was irrelevant and prejudiced her in the eyes of the jury by implying that she had brought a frivolous case against Gottlieb Hospital.  However, as cited above, the trial court sustained plaintiff's objection to the question and instructed the jury to disregard.  Later in the proceedings, the court further instructed the jury:

"In the cross-examination by the attorney for Gottlieb Memorial Hospital, he asked the question which I asked you to disregard.  It's very hard to disregard an improper question that you hear.  If you recall, that question referred to the plaintiff amending [her] complaint several times in the course of this lawsuit.  That's totally improper as a question for this reason: A pleading may be amended at any time before, during and even after the trial is over [and] on such terms that are reasonable and just.  The fact that an attorney has amended [her] complaint has no bearing on this case.  Do you understand that, ladies and gentlemen? Let's proceed with the redirect examination."

The trial judge cured any prejudice by promptly sustaining plaintiff's objection and giving the detailed instruction to disregard.  See 
Dahan v. UHS of Bethesda, Inc.
, 295 Ill. App. 3d 770, 780 (1998).

For the foregoing reasons, we affirm the trial court.  

Affirmed.

GALLAGHER and O. FROSSARD, J.J.’s concur.