Opinion originally filed
 NO. 5-00-0761

July 18, 2002;

Motion to publish in its entirety granted
 IN THE

October 2, 2002.

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

JIM L. FORTAE, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellee, )  Madison County.

)

)  No. 97-L-1063

)

JAMES W. HOLLAND and JOHN STOREY )

and ROSE STOREY, d/b/a STOREYLAND )

MOBILE HOME PARK, )

)

     Defendants-Appellants, )

)

and )

)

DELBERT AKERS and CAROUSEL )

BUILDING COMPANY, )  Honorable

)  Nicholas G. Byron,

     Defendants-Appellees. )  Judge, presiding.

___________________________________________________________________________

JUSTICE GOLDENHERSH delivered the opinion of the court:

James W. Holland and John Storey and Rose Storey, doing business as Storeyland Mobile Home Park (Storeyland) (collectively defendants), appeal from a judgment of the circuit court of Madison County awarding damages to Jim L. Fortae (plaintiff) for personal injuries.  On appeal, defendants raise numerous issues.  This court affirms.

I.  FACTS

Delbert Akers was driving a semitruck that was hauling part of a manufactured home.  Acting as lead vehicle was a pickup truck driven by defendant Holland.  The truck driven by Akers collided with the rear end of the vehicle driven by Holland, forcing Holland's vehicle into a lane of oncoming traffic.  The Holland vehicle then collided with a vehicle in which plaintiff was a passenger.  

Plaintiff filed suit, originally naming Holland, John Storey and Rose Storey, doing business as Storeyland Mobile Home Park, Akers, and Carousel Building Company (Carousel) as defendants.  Subsequent to the trial court's finding of a good-faith settlement, Akers and Carousel were released.  Plaintiff amended his complaint to allege in-concert liability against Holland and Storeyland.  The court denied cross-motions for summary judgment on the claims of in-concert liability, and the case proceeded to a jury trial. 

At the trial, both Holland and Akers described how the accident occurred.  Holland testified that while he was driving southbound on Route 111, he noticed a couple of vehicles two to three blocks ahead of him slowing down.  Holland had been driving approximately 55 miles per hour and began slowing down.  At this time, according to Holland, Akers was approximately a half mile behind him.  As Holland approached the location he had seen the brake lights, he saw a dog enter the roadway.  At that point, the speed limit was 55 miles per hour, and Holland was traveling approximately 20 to 25 miles per hour.  Holland testified that he had been applying his brakes up until this time and that he did not apply them harder upon seeing the dog enter the road.  Holland testified that, due to a temporary loss of consciousness he suffered from the accident, the last thing he remembers is looking in his rearview mirror and seeing the Akers vehicle immediately behind him striking the rear of his vehicle.  Holland was confronted with his deposition testimony that from the time he first saw the other vehicles until the time of the accident three to five minutes had passed, but he stated at the trial that it could have taken less time.

Holland testified that his responsibilities as a lead vehicle included maintaining a distance of between a quarter mile and a half mile away from the transport vehicle when the traffic allowed and notifying the transport vehicle of dangers when possible, via CB radio.  Holland testified that he had his hand on the CB radio at the time of the accident but had been unable to use it to contact Akers.

Akers testified that both vehicles had come to a stop at a stop sign prior to the accident and were gaining speed.  Akers had reached the speed of 45 miles per hour, and Holland had reached the speed of 55 miles per hour, bringing the distance between the two vehicles to 250 feet.  Akers stated that he was not trying to increase the distance between the two vehicles at that time because he was trying to build up speed with the trailer.  Akers testified that he then observed Holland slow down and come to a stop but that he was unable to avoid a collision.  Akers pled guilty to a citation for the failure to reduce speed to avoid an accident.  

Akers testified he believed that the load for his vehicle was too heavy and was unsafe.  Akers testified that when making a transport, drivers should keep a distance of a quarter mile to a half mile between them and should stay in constant CB alert in order to give the driver of the transport additional time to brake.  Both Akers and Holland testified that, as far as they knew, the radios were working at the time of the accident. 

Akers testified that in another incident earlier on the day of the accident, Holland had made an abrupt stop near a Blockbuster Video store.  Akers stated that when this occurred, he yelled at Holland on the radio and told him that he should not make such stops because the transport was a heavy load.  Akers testified that Holland did not respond.  Holland testified that he had not heard Akers make any prior comments about sudden stopping. 

The court denied defendants' motions for a directed verdict, made at the end of plaintiff's case and at the close of the evidence.  The jury returned a verdict awarding damages to plaintiff.  Defendants appeal. 

II.  ANALYSIS

Plaintiff argues that defendants' brief should be stricken because the statement of facts contains factual misstatements and mischaracterizations.  See 155 Ill. 2d R. 341(e)(6); 
Ryan v. Katz
, 234 Ill. App. 3d 536, 537, 600 N.E.2d 1206, 1207 (1992).  We find that defendants' statement of facts does not warrant striking their brief.

Conduct of Counsel

Defendants make various allegations of improper conduct by plaintiff and his counsel during the trial.  For some of these claims, such as the allegations that plaintiff used leading questions and made improper comments about Holland's reference to his health, defendants fail to present an adequate record and citation.  See 155  Ill. 2d R. 341(e).  For all of these claims, defendants fail to show that they were denied a fair trial.  A reversal is only appropriate when the challenged conduct is of such a character that it prevents a party from receiving a fair trial.  
Magna Trust Co. v. Illinois Central Ry. Co.
, 313 Ill. App. 3d 375, 396, 728 N.E.2d 797, 814 (2000).  This does not mean that the trial must be flawless and error-free.  
Perry v. Murtagh
, 278 Ill. App. 3d 230, 240, 662 N.E.2d 587, 594 (1996).  For example, defendants contend that an exhibit on lost wages should have been stricken because plaintiff's counsel stated in closing argument that the exhibit could be disregarded because it was not based on the evidence.  Nonetheless, defendants fail to address the court's ruling that the statement was merely argument, and defendants fail to display any substantial prejudice.  Similarly, defendants fail to identify how any emotional reaction by plaintiff substantially prejudiced the jury.  See 
Nowakowski v. Hoppe Tire Co.
, 39 Ill. App. 3d 155, 159, 349 N.E.2d 578, 582-83 (1976) (the trial court is in the best position to evaluate witness conduct).  

The most serious of defendants' contentions is the claim that plaintiff's counsel made disparaging comments in closing argument.  Plaintiff's counsel made several comments about defendants' counsel, the most critical of which were as follows:

"Because what did Delbert Akers say?  And I will be the first to admit that his testimony was darned confusing.  It got a little crazy[,] didn't it?  Mr. Roth [defense counsel] got a little crazy.

* * *

***  This is the first time I've ever heard an attorney call himself unreliable. ***   Well, he just said he was an advocate just like I am for [plaintiff].  Does that mean Mr. Roth was unreliable, too?  Is that what he said?

* * *

***  I wrote down a series of statements that Mr. Roth made which show that what he has tried to do is mislead you.  ***

* * *

***  The reason Mr. Roth has attempted to mislead you–[a]nd you have every right to be offended with that." 

Although 
ad hominem
 arguments are discouraged, attorneys are given wide latitude in closing argument, and a judgment will not be disturbed unless the commentary is so prejudicial that it deprived the opponent of a fair trial.  
Decker v. St. Mary's Hospital
, 249 Ill. App. 3d 802, 821, 619 N.E.2d 537, 550 (1993).  Every reasonable presumption must be indulged that the trial court performed its duty, and the trial court will not be reversed unless there has been a clear abuse of discretion.  
Lawing v. Chicago Transit Authority
, 142 Ill. App. 3d 119, 125, 491 N.E.2d 145, 149 (1986).  Considerable deference is given to the trial court in determining whether comments deprived a party of a fair trial, because the trial court is in a superior position to assess the accuracy and prejudicial effect of counsel's comments on the jury.  
Magna Trust Co.
, 313 Ill. App. 3d at 394, 728 N.E.2d at 813.  The trial court had the opportunity to hear all of the testimony and arguments, and it was also able to observe the parties and counsel throughout the trial and gauge their credibility and effect on the jury.  
Lawing v. Chicago Transit Authority
, 142 Ill. App. 3d 119, 125, 491 N.E.2d 145, 149 (1986).  Comments similar to those made by defendants' counsel have been found to not deprive the other party of a fair trial.  See 
Moore v. Centreville Township Hospital
, 246 Ill. App. 3d 579, 588, 616 N.E.2d 1321, 1328 (1993), 
rev'd on other grounds
, 158 Ill. 2d 543, 634 N.E.2d 1102 (1994) (comments that counsel "fiddled with" the jury and put a lying witness on the stand); 
Lawing
, 142 Ill. App. 3d at 125, 491 N.E.2d at 149 (personal attacks against the plaintiff's counsel and comments that counsel structured the testimony); 
Malatesta v. Leichter
, 186 Ill. App. 3d 602, 625, 542 N.E.2d 768, 784 (1989) (numerous comments, including the statement that the defendant "lied like a rug").  Similarly, in this case we do not find that the commentary was so inflammatory to warrant the reversal of the trial court's determination that there was a fair trial.  

Evidentiary Issues

Defendants contend that the court erred in barring the testimony of Mike Storey regarding the condition of the brakes of Akers' vehicle.  The court barred the testimony on the ground of untimely disclosure.  Defendants contend that the disclosure was not necessary because plaintiff never propounded to defendants any interrogatories requesting the subject matter of any witness testimony.  The record is incomplete on the initial interrogatories served upon defendants, and defendants failed to present a record of the interrogatories and answers provided.  See 
Buckholtz v. MacNeal Hospital
, 313 Ill. App. 3d 521, 527, 729 N.E.2d 949, 953 (2000).  Despite the apparent incompleteness of the record, the material before us indicates that exclusion was within the trial court's discretion because a case management order required defendants to identify any opinion witness and make complete all discovery disclosures by a prior date.  

Pursuant to Supreme Court Rule 218 (166 Ill. 2d R. 218), the trial court entered a case management order, filling in dates on a standard form.  The order read in part as follows:

"Discovery and depositions of the parties, fact witnesses[,] and the plaintiff's treating health care providers must be completed by April 1, 1999.

***

Defendant[s] will identify any examiner pursuant to Supreme Court Rule 215 [(166 Ill. 2d R. 215)] or any other opinion witness by February 28, 1999[,] and make him (or them) available for deposition by March 30, 1999."  

On September 24, 1999, the court entered an order modifying the case management order and allowing all defendants to supplement opinion witness disclosures up to October 1, 1999.  Prior to the deadlines, defendant Holland made the following disclosure of opinion witnesses:  "Mike Story [
sic
], John Story [
sic
], Rose Story [
sic
][,] and any other Storyland [
sic
] Mobile Home Sales or Carousel Building employees who may have relevant knowledge regarding the facts and circumstances concerning the accident of November 19, 1999 [
sic
][,] may be called to testify to such facts and circumstances."  

Although the parties disagree on the date that the supplemental disclosure was made, the parties agree that, within a week of the trial, defendants filed supplemental discovery notifying plaintiff that Mike Storey had knowledge of Delbert Akers' failure to hook up electronic brakes to the mobile home tote.  Before any evidence was submitted to the jury, plaintiff moved to bar Mike Storey from testifying regarding the supplemental disclosure.  In ruling on the motion, the judge stated:  "We don’t come up with material facts on the eve of a trial.  No way.  Both of you could have deposed him.  He could testify as to what is in the [r]ecord as to any statements made in the [r]ecord.  He can certainly testify to that.  If there is any material change, I'm not going to allow it.  Absolutely not."

The case management order required all parties to disclose all opinion witnesses and supplement all discovery well in advance of the date the supplemental answer was filed.  See 
Lucht v. Stage 2, Inc.
, 239 Ill. App. 3d 679, 690, 606 N.E.2d 750, 758 (1992) (under former Supreme Court Rule 220 (134 Ill. 2d R. 220), case management orders governed disclosure even if no discovery requests were made); 
Department of Transportation v. Crull
, 294 Ill. App. 3d 531, 538-39, 690 N.E.2d 143, 148 (1998) (revised rules support sanctions for discovery violations).  Supreme Court Rule 218 provides that a conference will be held shortly after the filing of a case to consider, among other issues, the "deadlines for the disclosure of opinion witnesses and the completion of written discovery and depositions."  166 Ill. 2d R. 218(a)(5)(iii).  The rule states: "The order controls the subsequent course of the action unless modified.  All dates set for the disclosure of opinion witnesses and the completion of discovery shall be chosen to ensure that discovery will be completed not later than 60 days before the date on which the trial court reasonably anticipates the trial will commence."  166 Ill. 2d R. 218(c).  The parties were obligated to act in accordance with the plain language of the order, and the court had the authority to bar the witness due to Holland’s failure to comply with the order.  See 166 Ill. 2d R. 219(c)(iv).  

The clear import of Rule 218, and the recent revisions to the discovery rules, is to avoid surprise.  See 
Adami v. Belmonte
, 302 Ill. App. 3d 17, 24, 704 N.E.2d 708, 713 (1998). After the defendants presented an opinion witness disclosure in accordance with the order but then submitted a supplemental discovery response at a date after the deadlines, the court could properly have seen defendants as violating the order and surprising plaintiff.  The trial court was within its discretion in barring the testimony.

Defendants next contend that the court erred in excluding reference to deposition testimony of plaintiff.  Plaintiff's deposition contained the following exchange:

"Q.  [Defense counsel:] Okay. What did Mr. Holland tell you at the emergency room?

A.  My brother[-]in[-]law talked to him.  As I recall, he said that he knew the wreck wasn't his fault.  That it was the driver of the larger truck that caused the accident.

Q.  Did you–

A.  I agreed; you know, I agree [
sic
] to that."

The trial court excluded reference to this statement on the grounds that it was hearsay and a legal conclusion.  On appeal, defendants argue that the statement is an admission by way of adoption and, therefore, should not be excluded as hearsay.  See M. Graham, Cleary & Graham's Handbook of Illinois Evidence, §802.6 (7th ed. 1999).  Defendants also point out that the former bar on testimony as to ultimate issues has been removed, and they cite to 
Richardson v. Chapman
, 175 Ill. 2d 98, 107, 676 N.E.2d 621, 625 (1997) (the requirement of neutral figures in explaining the concept of present cash value was abandoned); 
Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.
, 49 Ill. 2d 118, 120, 273 N.E.2d 809, 810 (1971) (an expert was allowed to testify whether a railroad crossing was adequately protected).

Although trial courts may allow informed opinions on ultimate issues, this does not mean that a statement of legal conclusion must be allowed as an admission.  What constitutes an admission is determined on a case-by-case basis.  
Schall v. Forrest
, 51 Ill. App. 3d 613, 615, 366 N.E.2d 1111, 1113 (1977).  Illinois courts have found that one party's conclusion that another person is at fault in an automobile accident does not operate as an admission. 
Ferry v. Checker Taxi Co.
, 165 Ill. App. 3d 744, 748, 520 N.E.2d 733, 736 (1987) (the plaintiff blamed the other driver for the accident); 
Schall
, 51 Ill. App. 3d at 615, 366 N.E.2d at 1113 (the defendant stated that he thought the other driver was mostly at fault); 
Harris v. Minardi
, 74 Ill. App. 2d 262, 266, 220 N.E.2d 39, 41 (1966) (the defendant's answer that he failed to yield the right of way was not an admission).   

In this case, the value of such a statement by plaintiff is particularly suspect in light of the alternative theories of liability asserted and the absence of more concrete testimony in the deposition.  Even if plaintiff's statement had been an admission that the movement of the truck driven by Akers "caused the accident," its exclusion would have been harmless error because plaintiff's statement did not address the actions taken by Holland that were the basis for in-concert liability.  See 
Schall
, 51 Ill. App. 3d at 615, 366 N.E.2d at 1113.

Defendants also contend that the court committed error in prohibiting them from presenting evidence of bias on the part of Akers arising from Holland having a separate pending lawsuit against Akers.  The extent of cross-examination allowed on bias or financial interest is a matter of trial court discretion.  
Pappas v. Fronczak
, 249 Ill. App. 3d 42, 49, 618 N.E.2d 878, 883 (1993); 
Sweeney v. Max A. R. Matthews & Co.
, 46 Ill. 2d 64, 71, 264 N.E.2d 170, 173 (1970).  In this case, questions regarding the pending suit would have been prejudicial against plaintiff by inviting sympathy for Holland's damages and would have distracted the jury from the issues at hand.  The trial court acted within its discretion.

In-Concert Liability

Defendants contend that the jury instructions misstated the law regarding "in concert" liability.  We note initially that the issues regarding jury instructions were waived by defendants.  Defendants failed to tender opposing instructions on the issues of the applicable burden of proof and the definition of in-concert liability.  Defendants waived the issues stemming from these instructions, including their arguments regarding clear and convincing evidence, by failing to submit the instructions to the trial court.  
Vojas v. K-Mart Corp.
, 312 Ill. App. 3d 544, 549, 727 N.E.2d 397, 401 (2000); 
Aguinaga v. City of Chicago
, 243 Ill. App. 3d 552, 575, 611 N.E.2d 1296, 1313 (1993).  Similarly, defendants waived their objections to plaintiff's commentary in closing arguments regarding instructions by failing to object to the statements. 

Nonetheless, we feel compelled to discuss the instructions given to the jury defining in-concert liability and setting forth the elements plaintiff was required to prove, so that we may more fully address other matters in this case, including the meaning of in-concert liability.  The following instruction defining in-concert liability was submitted to the jury:

"A person acts in concert with another person if:

The defendant knows that the other person's conduct is negligent and gives substantial assistance to the other to so conduct himself; or

The defendant gives substantial assistance to the other in accomplishing a negligent result and his own conduct, separately considered, constitutes a breach of duty to the plaintiff."

The following instruction setting forth the elements plaintiff was required to prove was also submitted to the jury:

"The plaintiff has the burden of proving each of the following propositions:

First, that the defendant acted or failed to act in one of the ways claimed by the plaintiff as stated to you in these instructions and that in so acting, or failing to act, the defendant acted in concert with another person or was negligent;

Second, that the plaintiff was injured;

Third, that the defendant acted in concert or acted negligently[] and his conduct was a proximate cause of harm to the plaintiff.

If you find from your consideration of all the evidence that any of these propositions has not been proved, then your verdict should be for the defendants." 

Defendants contend that these instructions improperly allowed the jury to find in favor of plaintiff on the in-concert theory without ever finding that defendants had engaged in any negligent conduct.  Defendants support their argument by citing to the following statements made by plaintiff to the court: "[I]t was not necessary that the plaintiff show that Holland's conduct was tortious; it was only necessary that plaintiff show that Holland acted in concert with a person whose conduct was tortious."  An investigation into the source of the tendered instructions reveals that defendants' argument is a mere play upon semantics and that the jury was properly informed by accurate instructions on in-concert liability. 

Section 876 of the Restatement (Second) of Torts defines in-concert liability:

"For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

(a)  does a tortious act in concert with the other or pursuant to a common design with him, or

(b)  knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or 

(c)  gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person."  Restatement (Second) of Torts §876, at 315 (1977).

The instructions given to the jury accurately state the law.  Although Illinois courts have not fully colored-in the law regarding in-concert liability, our courts have stated that section 876 of the Restatement (Second) of Torts provides an accurate definition.  
Woods v.  Cole
, 181 Ill. 2d 512, 517, 693 N.E.2d 333, 335 (1998); 
Umble v. Sandy McKie & Sons, Inc.
, 294 Ill. App. 3d 449, 451, 690 N.E.2d 157, 158 (1998).  There was no requirement that plaintiff prove that Holland's actions fit under the standard definition of negligence, in addition to proving that Holland violated a duty to not act in concert with a tortfeasor who caused harm to plaintiff.  Wording the instruction such that plaintiff would have to prove that Holland acted in concert and also negligently would invite confusion as to the meaning of in-concert liability.  The wording of the instructions setting forth plaintiff's burdens and defining in-concert liability paralleled section 876 of the Restatement (Second) of Torts and was a clear and accurate statement of the law.

Defendants also contend that they should have been granted a directed verdict.  Defendants moved for a directed verdict after plaintiff's 
voir dire
 and again after the close of plaintiff's evidence.  Defendants claim that plaintiff made judicial admissions during 
voir dire
.  In 
voir dire
, plaintiff's counsel stated: "[Plaintiff] is not a victim of a crime.  Nobody did anything intentionally to harm him."  He further stated, "I'll represent again[,] we are not claiming this is intentional conduct or an intentional tort."  Defendants contend that without any such intention there can be no in-concert action.  Defendants further contend that a directed verdict should have been granted at the end of plaintiff's case because plaintiff failed to present evidence to support a claim of in-concert liability.  Defendants' arguments are based on a misinterpretation of in-concert liability.  

Defendants contend that in-concert liability is precluded by plaintiff's admission that Holland did not commit an intentional tort.  Plaintiff's statement that Holland did not intend to harm plaintiff does not undermine this claim.  Defendants' analysis is based on the similarity between in-concert liability and conspiracy.  See 
Adcock v. Brackgate, Ltd.
, 164 Ill. 2d 54, 63, 645 N.E.2d 888, 894 (1994) (indicating that intent is necessary for a conspiracy and discussing subsection (a) of section 876 of the Restatement (Second) of Torts); 
Wolf v. Liberis
, 153 Ill. App. 3d 488, 496, 505 N.E.2d 1202, 1208 (1987) (defining aiding-and-abetting liability and in-concert liability).  Although there is a similarity between in-concert liability and other forms of liability, in-concert liability is a separate form of action.  See 
Wolf
, 153 Ill. App. 3d at 496, 505 N.E.2d at 1208.  

A closer look at in-concert liability under the separate subsections of section 876 of the Restatement (Second) of Torts reveals that defendants' characterization of in-concert liability is too narrow.  As indicated in our discussion on jury instructions, there are three separate forms of in-concert liability defined in section 876.  Plaintiff admits there is no liability under subsection (a), but he contends that defendants are liable under both subsections (b) and (c).  Contrary to defendants' characterizations, liability under these subsections is not based on common design or agreement, but on substantial assistance.  Because we find liability under subsection (b), we need not discuss subsection (c).  In-concert liability under subsection (b) and the factors necessary for liability under this subsection can best be seen by comparing two cases heavily relied on by defendants:  
Wolf
 and 
Umble
.

In 
Wolf
, the First District discussed liability under subsection (b).  In 
Wolf
, the defendant had left her fiancé's apartment after having a few drinks.  The fiancé followed in a separate car to make sure the defendant got home.  On the way, the defendant crashed her car into a store window.  Her fiancé stopped and helped back the vehicle out of the window. The fiancé told the defendant to stay there while he went to call the police, but the defendant drove away.  On the way back to his car the fiancé was approached by three men who attempted to restrain him.  The fiancé broke away from the assailants and got into his car.  When he began to drive away, one of the assailants pulled open the car door and attempted to take control of the steering wheel.  With the assailant hanging onto the steering wheel through an open door, the fiancé drove down the wrong side of a road and into the vehicle driven by the plaintiff's decedent. 

The 
Wolf
 court found that there was no in-concert liability for the defendant with respect to the plaintiff's injuries.  The court separately defined civil conspiracy, aiding-abetting liability, and in-concert liability, but it addressed all three by showing the lack of a relationship between the defendant and the actions of her fiancé that caused the accident.  
Wolf
, 153 Ill. App. 3d at 495-96, 505 N.E.2d at 1208.  The court found that the defendant did not encourage her fiancé to act tortiously by leaving the apartment intoxicated or by having her fiancé follow her home.  The court also found that the fact that her fiancé removed her car from the store window was not evidence that she assisted her fiancé in his subsequent tortious act.  The court stated as follows:  

"At the time of the injury to plaintiff's decedent, [the defendant] had driven away from the scene of the original incident in her own car.  Having left the scene of the accident, there was no way in which she could have substantially assisted or encouraged the negligent conduct of [her fiancé]."  
Wolf
, 153 Ill. App. 3d at 497, 505 N.E.2d at 1209.

In 
Umble
, the plaintiff sought a recovery against a service station that repaired a headlight and leaking tire of a vehicle being driven by an intoxicated driver.  After the vehicle left the shop, the driver was involved in an accident, killing another person.  In denying liability, the court stated as follows: 

"The complaint contains no allegation that any of defendant's employees actively encouraged Butzen to get back in his car and drive.  We do not equate failing to prevent certain conduct with actively encouraging that conduct.  Moreover, the complaint's allegations do not establish that defendant provided substantial assistance to Butzen.  There is no allegation that Butzen's car was inoperable before defendant made the repairs.  The most reasonable inference from the complaint is that Butzen drove the car into the dealership.  Had defendant refused to make the repairs, Butzen could simply have continued driving.  At least, arguably, defendant's repair of the tire and headlight made Butzen's car safer rather than more dangerous."  
Umble
, 294 Ill. App. 3d at 451-52, 690 N.E.2d at 159.  

The 
Umble
 court also distinguished the case before it from other cases where defendants were found liable for selling cars to unlicensed and incompetent drivers.  See 
Small v. St. Francis Hospital
, 220 Ill. App. 3d 537, 541, 581 N.E.2d 154, 158 (1991); 
Seward v. Griffin
, 116 Ill. App. 3d 749, 754, 452 N.E.2d 558, 563 (1983).  Unlike in cases where cars are sold, the defendant in 
Umble
 had no right to refuse to return the vehicle to its owner.  Second, the court pointed out that unlike checking a driver's license, determining whether someone is drunk is difficult and requires expertise. 

Umble
 and 
Wolf
 may stand for the principle that in-concert liability is not a panoply for liability whenever one party's actions would not have occurred but for the actions of another, but these cases are easily distinguished from the case at hand.  Unlike 
Wolf
, in the case at hand Holland was still present and played a crucial role in the negligence alleged to have been committed by Akers.  Unlike in 
Wolf
, Holland was present in the most obvious sense, because he was physically involved in the traffic accident.  Unlike 
Umble
, the nature of the relationship between Holland and Akers meant that failing to act to prevent Akers from driving too closely was encouragement for such conduct.  Due to the relationship of Holland and Akers, defendants' actions in this case are more similar to the cases of selling to an unlicensed driver, distinguished in 
Wolf
.  See 
Small
, 220 Ill. App. 3d at 541, 581 N.E.2d at 158; 
Seward
, 116 Ill. App. 3d at 754, 452 N.E.2d at 563.  In contrast to a garage mechanic's ability to observe a driver's possible drunkenness, Holland's relationship with Akers placed on him the responsibility to observe Akers' driving.  The significance of these distinctions can only be seen by looking at the crucial element of liability under subsection (b) of section 876: substantial assistance. 

The factors for determining substantial assistance were outlined in 
Sanke v. Bechina
, 216 Ill. App. 3d 962, 964, 576 N.E.2d 1212, 1214 (1991).  In 
Sanke
, the defendant and the plaintiff's decedent were both passengers in a sports car.  The defendant allegedly verbally encouraged the driver to disobey the posted speed limit and a stop sign.  The vehicle veered off the road and struck some trees, and the plaintiff's decedent was killed.  

The court found that the plaintiff had alleged in-concert liability as set forth under subsection (b) of section 876 of the Restatement (Second) of Torts.  In distinguishing 
Wolf
, the 
Sanke
 court found that, in the case before it, the plaintiff alleged that the defendant, a passenger, encouraged the driver to drive at an excessive speed and to disobey a stop sign as part of a vehicular competition.  The court quoted commentary to section 876(b):

" '
d
.  Advice or encouragement to act operates as a moral support to a tortfeasor and if the act encouraged is known to be tortious it has the same effect upon the liability of the adviser as participation or physical assistance.  If the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it is himself a tortfeasor and is responsible for the consequences of the other's act.  This is true both when the act done is an intended [one] *** and when it is merely a negligent act.  ***

The assistance of or participation by the defendant may be so slight that he is not liable for the act of the other.  In determining this, the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other[,] and his state of mind are all considered.' "  
Sanke
, 216 Ill. App. 3d at 965-66, 576 N.E.2d at 1214 (quoting Restatement (Second) of Torts §876(b), Comment 
d
, at 317 (1979)).

As made evident by 
Sanke
, defendants' argument that in-concert action requires an intentional act is incorrect.  The tortious act may be either intentional or negligent.  Thus, an  analysis of liability for in-concert liability in this case calls for us to look at the language in the commentary of subsection (b) and the factors set forth in 
Sanke
 to determine if the participation was so slight that one defendant was to not be liable for the act of the other.  

In terms of the factors outlined in 
Sanke
, plaintiff presented evidence that Holland gave substantial assistance to Akers.  The nature of the act of negligently driving is directly connected to the relationship between Holland and Akers.  Holland's relation to the other (Akers) as an escort vehicle weighs in favor of the assistance being substantial.  Akers' testimony that he had previously warned Holland on the radio that he could not make abrupt stops also indicates a state of mind on the part of Holland which supports a finding of substantial assistance.  In addition, Holland's presence was necessary for the commission of the tort, and indeed, he was physically involved in the traffic accident.  Therefore, the jury had sufficient evidence to conclude that Holland substantially assisted Akers in acting negligently.

Joint and Several Liability

The concept of substantial assistance also explains why the claims against defendants were not resolved by the release between Akers and plaintiff.  Defendants argue that their liability is purely vicarious and that, therefore, once Akers was released, there was no basis for holding them liable.  Defendants contend that in this case in-concert liability is akin to liability for a joint venture and that in a joint venture a release of an agent also resolves the claim against the principal.  See 
Gilbert v. Sycamore Municipal Hospital
, 156 Ill. 2d 511, 622 N.E.2d 788 (1993); 
Groark v. Thorleif Larsen & Son, Inc.
, 231 Ill. App. 3d 61, 596 N.E.2d 78 (1992).  Joint ventures in business provide a basis for indemnity that is not based on fault in fact.  See 
American National Bank & Trust Co. v. Columbus-Cuneo-Cabrini Medical Center
, 154 Ill. 2d 347, 354, 609 N.E.2d 285, 289 (1992) (business benefits of a principal-agent relationship form the basis for indemnity, not the fault of the principal).  Unlike these cases, under in-concert liability a defendant must be personally engaged in the sense of substantially assisting the negligent actor.  In contrast to the liability Storeyland faces for Holland under the doctrine of 
respondeat superior
, defendants' liability for Akers' negligence is through acting in concert.  Under the theory of acting in concert, liability is joint and several.  
Woods v. Cole
, 181 Ill. 2d 512, 516, 693 N.E.2d 333, 337 (1998).  In cases where an action is done in concert, liability for all that is done is visited on each defendant, and a release of one defendant does not preclude an action against another.  See 
Woods
, 181 Ill. 2d at 516, 693 N.E.2d at 337; 
Henry v. St. John's Hospital
, 138 Ill. 2d 533, 540, 563 N.E.2d 410, 414 (1990) (a settlement against one party does not affect the right to proceed against a jointly and severally liable defendant). 

Similarly, defendants' contention that the release between plaintiff and Akers was not in good faith is also misplaced.  Carousel and Akers filed a motion for a good-faith finding, with an attached, unsigned release as an exhibit.  After the motion was granted, the words "but does not release" were crossed out; substituted in their place, in handwriting, were the words "with the exception of" in front of the names of the remaining defendants.  The revised writing is appropriate due to the joint-and-several nature of liability in this case, and the revision was approved by the trial court.  The trial court twice reviewed the issue of good faith in light of the revision–in oral argument prior to the trial and in a posttrial motion.  The trial court's determination of good faith will not be reversed absent a showing of an abuse of discretion by clear and convincing evidence.  
Schramm v. County of Monroe
, 325 Ill. App. 3d 760, 764, 758 N.E.2d 880, 883 (2001).  We see no reason to disturb this decision.  

Accordingly, the judgment of the circuit court of Madison County is hereby affirmed.

Affirmed.

MAAG, P.J., and HOPKINS, J., concur.

                                      NO. 5-00-0761

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

JIM L. FORTAE, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellee, )  Madison County.

)

)  No. 97-L-1063

)

JAMES W. HOLLAND and JOHN STOREY )

and ROSE STOREY, d/b/a STOREYLAND )

MOBILE HOME PARK, )

)

     Defendants-Appellants, )

)

and )

)

DELBERT AKERS and CAROUSEL )

BUILDING COMPANY, )  Honorable

)  Nicholas G. Byron,

     Defendants-Appellees. )  Judge, presiding.

___________________________________________________________________________________

Opinion originally filed
: July 18, 2002

Motion to Publish Granted
: October 2, 2002

Modified Opinion Filed
: October 2, 2002

___________________________________________________________________________________

Justices
: Honorable Richard P. Goldenhersh, J.

Honorable Gordon E. Maag, P.J., and

Honorable Terrence J. Hopkins, J.,

Concur

___________________________________________________________________________________

Attorneys
 Ronald A. Roth, Richard A. Tjepkema, Roth Law Offices, 2421 Corporate Centre

for
 Drive, Suite 200, Granite City, IL 62040

Appellants
 

___________________________________________________________________________________

Attorneys
 Gail G. Renshaw, The Lakin Law Firm, 301 Evans Avenue, P.O. Box 229, Wood

for
 River, IL 62095 (for Jim L. Fortae)

Appellees
 

Robert J. Bassett, Julie L. Constance, Donovan, Rose, Nester & Joley, P.C., 8 East

Washington, Belleville, IL 62220 (for Delbert Akers and Carousel Building Co.)

___________________________________________________________________________________